**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 05875 |
| | ) | |
| Awad Odeh & Julia Salameh | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Awad Odeh & Julia Salameh | ) | |
| | ) | Adv. No. 23 A 130 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| Ahmad Zahdan | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Plaintiffs Ahmad Zahdan and Julia Salamehs' ("Plaintiffs") motion for summary judgment ("Motion") against Defendant Ahmad Zahdan ("Defendant") on the sole count of the underlying complaint ("Complaint"). In the Complaint, Plaintiffs seek to avoid their obligations and transfers, including liens and payments, to Defendant arising from a note and security agreement as fraudulent transfers and to recover all payments made to Defendant under those obligations. The court reviewed the relevant papers and pleadings. For the reasons stated below, the court will deny the Motion.

**I.      JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Venue is proper under 28 U.S.C. § 1409(a).

## II.     BACKGROUND

**A.     Statements of Undisputed Facts under Local Bankruptcy Rule 7056-1[1]**

Pursuant to Local Bankr. R. 7056-1, a party moving for summary judgment must file a statement of undisputed material facts ("7056-1 Statement").  The 7056-1 Statement "must consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.  Failure to submit such a statement constitutes grounds for denial of the motion."  Local Bankr. R. 7056-1B.

The party opposing a motion for summary judgment is required by Local Bankr. R. 7056- 2 to respond "to each numbered paragraph in the moving party's statement[.]" Local Bankr. R. 7056-2A(2)(a).   The opposing party must also file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon[.]" *Id.* at (2)(b).

If the opposing party files a statement of additional facts, then "the moving party may submit a concise reply in the form prescribed in Rule 7056-2 for response.  All additional material facts set forth in the opposing party's statement filed under section A(2)(b) of Rule 7056-2 will be deemed admitted unless controverted by a statement of the moving party filed in reply."  Local Bankr. R. 7056-1C.

With their Motion, Plaintiffs filed a statement of uncontested facts.  (Plaintiffs'

---

[1] Citations are to the Local Rules in effect at the time the Motion was taken under advisement.  The Local Rules were amended, effective September 1, 2024.

Statement ("PS"), Dkt 35),   Defendant responded to Plaintiffs' statement and added an

additional statement of undisputed material facts (Defendant's Response Statement, Dkt 47-

1, pp. 1-3; Defendant's Statement ("DS"), Dkt 47-1, pp. 3-7).  Plaintiffs then responded to

Defendant's statement (Plaintiff's Response Statement, Dkt 50).

The court has reviewed all statements of uncontested material facts and responses.

All admitted and relevant facts are summarized below.

**B.      Admitted and Undisputed Facts**

Plaintiffs and Defendant are part of a close-knit Palestinian community in Chicago's

south suburbs.  (PS ¶1).  In 2019, at the request of Plaintiff Odeh's brother Ehab, Defendant and

his company, AZ SPE LLC, invested $1,185,000 in North American Refinery NAR Inc.

("NAR").  (Complaint, ¶¶9, 10).[2]

In August and early September 2019, NAR issued four checks to re-pay the investment,

but none of the four checks were honored by the bank.  (DS ¶¶10, 12).  NAR was unable to repay

the entire amount, so Defendant tried to hold Ehab personally liable.  (PS ¶9).  Ehab also could

not pay the amount owed, so Defendant asked Plaintiff to sign a promissory note ("Note") for the

amount owed.  (PS ¶10).  In Palestinian culture, it is common for individuals to assume debts

that their family members cannot pay.  (PS ¶11).

On September 14, 2019, at least Plaintiff Odeh signed the Note which, "for value

received," obligated Plaintiffs to repay $900,000 plus interest by September 23, 2019.

(Complaint, ¶22; Motion Ex. 4, pp. 13-15 (the Note)).  The Note was executed along with a

---

[2] Defendant argues whether the amount was an investment or a loan in his response to Plaintiffs' Statement, but
admits the paragraphs 9 and 10 of the Complaint characterizing the amount as an investment.  For the purposes of
this opinion, the distinction is irrelevant.

security agreement giving Defendant a security interest in four properties chosen by Plaintiff

Odeh.  (PS ¶¶ 14-16; Motion Ex. 4, pp. 2-10).

When Plaintiffs agreed to the Note, they became insolvent as a result of the Note or were

already insolvent at the time of signing.  (PS ¶69; DS ¶9).

In March, 2021, Defendant filed a complaint in Cook County, IL against Plaintiffs which

sought a judgment for the amount owed Defendant under the Note.  (Motion Ex. 5).  Defendant

obtained a default judgment against Plaintiffs.  (Complaint, ¶¶47, 51).

In May, 2023, Plaintiffs filed a bankruptcy case under subchapter V of chapter 11 of the

Bankruptcy Code.  Defendant filed a proof of claim for $1,163,526.59 related to the note and

resulting judgment.  (Motion Ex. 12).[3]

### III.    Legal Analysis

A.    **Standard for a Motion for Summary Judgment**

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made

applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056. In ruling on the motion, the

court must draw all reasonable inferences from the underlying facts in the responding party's

favor.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *Parkins v. Civ. Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Summary judgment is appropriate under Rule 56 if the moving party shows that no

genuine issue of material fact exists and that it is entitled to prevail in the case as a matter of law.

---

[3] Defendant, in his response to Plaintiffs' Statement, states that paragraphs 20-53 of Plaintiffs' Statement "should"
be stricken as they are irrelevant.  Plaintiffs, in their Reply, treat this as a motion to strike those paragraphs and
argue against it.  The facts contained in those paragraphs appear to essentially provide context for the issues at hand.
The paragraphs will not be stricken, but the facts in those paragraphs did not materially factor into this court's
present decision.

The party opposing summary judgment "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (quotation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

**B.      Illinois Uniform Fraudulent Transfer Act and Reasonably Equivalent Value**

**1.      The Elements of a Fraudulent Transfer Claim**

Plaintiffs seek to avoid their obligations to Defendant under the Note, avoid and recover any liens held by Defendant on Plaintiffs' property, and avoid and recover any repayments made by Plaintiffs to Defendant under 11 U.S.C. §§ 544 and 548, and under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/1-12.

> A plaintiff seeking to avoid a fraudulent transfer based on constructive fraud under § 548(a)(1)(B) must plead and prove the following: (1) a transfer of the debtor's property or interest; (2) made within two years before the date the bankruptcy petition was filed; (3) for which the debtor received less than a reasonably equivalent value in return; and (4) that the debtor (a) was insolvent on the date of the transfer or became insolvent as a result, (b) engaged in business or a transaction as a result of which the debtor's remaining capital was unreasonably small, or (c) intended to incur, or should have known he would incur, debts he would be unable to pay.

*Peterson v. TTS Granite Inc.,* (*In re Mack Indus., Ltd.*), 622 B.R. 887, 892 (Bankr. N.D. Ill. 2020).  Under the IUFTA, the standard for reasonably equivalent value is the same as under

5

section 548(a).  *Id* at 892, 893.  The question of whether Plaintiffs received reasonably equivalent value comes down to

> a three-part inquiry: (1) did the debtor receive some value, (2) was the value received in exchange for the transfer by the debtor, and (3) did the value received by the debtor have a reasonable equivalence to what the debtor transferred. Value is given for a transfer if in exchange for the transfer, property is transferred or an antecedent debt is secured or satisfied.

*In re Mid-Illini Hardwoods, LLC*, 576 B.R. 598, 604 (Bankr. C.D. Ill. 2017).  The definition value under section 548 and the IUFTA both specifically note the definition of value does not include an unperformed promise to support a relative of the debtor.[4] 11 U.S.C. § 548(d)(2)(A).

Here, the parties do not contest that Plaintiffs made a transfer to Defendant within the look-back period under the IUFTA and that the transfer made Plaintiffs insolvent or that they were insolvent when they made the transfer.  The court must therefore determine whether there is a material issue of fact for the remaining issue: whether Plaintiffs received reasonably equivalent value for the transfer.

### 2.    Party's Contentions

Plaintiffs maintain that their decision to agree to the Note and provide the liens to Defendant was solely made due to satisfy cultural and familial obligations.  (PS, Ex. 2, ¶¶ 9, 11).  NAR, whose debt collections were delayed by the Note, was run by Plaintiff Odeh's brother and Plaintiff Odeh was simply attempting to help him.  If true, then there would have been no equivalent value received.

Defendant's allegations are more complicated.  Defendant alleges Plaintiff Odeh was actively involved in the loans between NAR and Zahdan, that NAR was a Ponzi scheme, and that

---

[4] The definition in IUFTA is broader, excluding any support to "another person." 740 ILCS 160/4(a).

6

Plaintiff Odeh was the owner of NAR.  According to Defendant, Plaintiffs' needed the forbearance obtained by executing the Note in order to allow NAR to resolve its liquidity issue and repay Defendant. If true, then it is possible that Plaintiffs received reasonably equivalent value in exchange for the obligations.

Plaintiffs generally deny these allegations  in their response to Defendant's Statement. They do admit that Plaintiff Odeh was "involved with the family business from time to time." Plaintiffs also argue Defendant apparently confuses North American Refinery NAR Inc. (previously defined as "NAR") with North American Trading, Inc., which used the assumed name of North American Refinery. Plaintiffs point to NAR's Articles of Incorporation being signed 5/9/2018.  That date is after some of Defendant's allegations and exhibits.  (*See* DS, Exs. 2-9).  To add to the confusion NAR also did business as North American Refinery.  (DS, Exs. 10, 11).

In defense of his position, Defendant attaches a number of exhibits.  Defendant provides investment agreements with other purported investors in NAR.  (DS, Exs. 9, 10, 11).  Notably, these investment agreements appear to be signed by Plaintiff Odeh on behalf of NAR.  At least two of the agreements note Plaintiff Odeh as the owner of NAR and that Plaintiff Odeh personally guarantees NAR's debt.  (DS, Exs. 9, 10).  Both of these appear to be signed in 2019 after NAR's incorporation.  The declaration of Waleed Kisswani, submitted by Defendant, also appears to use NAR interchangeably for the two companies, both apparently called North American Refining.  (DS, Ex. 2).

Of note, and not well explained by either party, Defendant, in his declaration, alleges he invested with a North American Refinery, through Plaintiff Odeh, as early as 2012 and again in

7

2018.  (DS, Ex. 1).  These investments were apparently repaid.  He then alleges he invested in the same North American Refinery in 2019 based on a discussion led by Plaintiff Odeh.[5] Plaintiffs similarly confuse the identities of relevant entities in the Complaint.  Plaintiffs refer first to North American Refinery NAR Inc. in one paragraph and then, with no explanation, refer to North American Refinery.  (*See* Complaint, ¶¶ 7, 9-12, 15, 16, 19).  Plaintiff Odeh similarly uses the terms interchangeably in his declaration.  (PS, Ex. 2).  In Plaintiffs' Response to Defendant's Statement, Plaintiffs only refer to "North American Refinery NAR" which leaves the question of whether "North American Refinery," referenced in the Complaint and Plaintiff Odeh's declaration, are the assumed name North American Refinery, the d/b/a North American Refinery, or possibly a general term for all North American Refinery entities.

To further complicate the issue, the Note itself does not specify what specific corporate entity the debt relates to.  There is no description of any investment or any existing date beyond the one between Plaintiffs and Defendant memorialized by the Note.

### 3.      Disputed Issue of Reasonably Equivalent Value

At this point in the adversary proceeding, the court cannot find that there is no genuine dispute of material fact as to whether Plaintiffs received reasonably equivalent value when agreeing to the Note and the Security Agreement.  Plaintiffs have raised a number of arguments, centered on the primary fact that the terms of the Note itself do not set forth the consideration that Plaintiffs received in return for their obligations.  The Note itself states in conclusory fashion that the debt was extended in exchange for "value received."  Although Plaintiff raises several

---

[5] Similarly confusing and addressed by neither party is that Defendant's verified state court complaint, which eventually led to the judgment and debt at issue, alleges that the Note is a result of Plaintiffs asking Defendant for a personal loan, which he gave to them.  (PS, Ex. 5).  There is no mention of a guaranty or of NAR.  *Id.*

arguments in an attempt to negate that conclusion, the record before the court contains disputed facts on this material issue.

First, in their Motion, Plaintiffs maintain that they were not involved in any loans between NAR and Defendant prior to the Note and also maintain that they did not benefit in any way from the Note. Yet, Defendant produced two investment agreements showing Plaintiff Odeh as the owner of NAR and soliciting investments on behalf of NAR that Plaintiff did not credibly rebut.  If it is true that Plaintiff Odeh owned NAR, that Defendant collecting on his investment would have bankrupted NAR, and that Plaintiff Odeh entered into the Note to forbear collections so that NAR would have time to clear funds through their bank, then Plaintiffs may have received a reasonably equivalent benefit.[6]

Second, based on the pleadings before the court, it is impossible at this time for the court to determine which entity, NAR or a similarly named entity, each party is referring to.  Both parties use the names in different forms, seemingly interchangeably.  Defendant does not have an ownership interest in the entities and, therefore, his apparent confusion with the companies may be explained. But, Plaintiffs should be well aware of the names and structures of companies they apparently own.  The distinction between the business entities and Defendant's prior investments involving Plaintiff Odeh and NAR or a similar sounding entity bears on whether Plaintiffs received a benefit due to Plaintiffs' fiscal relationship to the entity.

Third, and finally, both sides rely heavily on declarations by the parties, or, in Defendant's case, a witness.  Both sides swear to importantly different versions of events

---

[6] Even if we assume *arguendo* that NAR was a Ponzi scheme run by Plaintiff Odeh, a forbearance is beneficial to a Ponzi scheme.  *See Dream Med. Grp., LLC v. Church Enterprises, (In re Church)*, 657 B.R. 431, 440 (Bankr. D.S.C. 2024) (discussing Ponzi schemes).

including how Plaintiffs' involvement in NAR, how Plaintiffs were involved with Defendant's loans to NAR, and what happened at the signing of the Note.  This is in addition to the other factual questions.  Courts do not always need to hear testimony to determine issues of equivalent value.  But "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony except in extreme cases. The exceptional category is—exceptional." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).  In the present case neither party has provided deposition testimony, interrogatories, or requests to admit.

A genuine issue of whether reasonably equivalent value was received – a material fact – exists.  On the current record, summary judgment must be denied.  It will be best for the court's analysis of the evidence to hear the testimony directly from the parties and subject to cross examination by opposing counsel.  At a trial, the burden of proof will be on Plaintiffs to show by a preponderance of the evidence that they did not receive equivalent value in exchange for their obligations under the Note and any transfers.

### IV.  CONCLUSION

For all of the reasons stated above, the Motion for Summary Judgment is denied.  The court will enter an order, consistent with this ruling.

ENTERED:

Date:   September 30, 2024

_____
Honorable DAVID D. CLEARY
United States Bankruptcy Judge

10